UTICA,
July, 1830.

The People
v.
Trustees of
Geneva Col-
lege.

## THE PEOPLE *vs.* THE TRUSTEES OF GENEVA COLLEGE.

A *college* founded and established by the regents of the university in a partic-
ular place has not the power to establish a school as a branch of such col-
lege, and to appoint *professors* to take charge of the same in a place differ-
ent from that in which the college is located; and it was accordingly held,
that the establishment by *Geneva college*, located in the *county of Ontario*,
of a medical school *in the city of New-York*, called " The Rutgers Medical
Faculty of Geneva College," and the appointment of professors to take
charge of the same, was the usurpation of a *franchise*, for which an *infor-
mation* in the nature of a *quo warranto* might be filed.

INFORMATION in the nature of a *quo warranto.* The trus-
tees of *Geneva College* (being an incorporated college,) lo-
cated in the village of Geneva, in the county of Ontario, in
the western part of this state, established a *Medical Faculty in
the city of New-York,* called " The Rutger's Medical Fac-
ulty of Geneva College," and appointed professors of medi-
cine, surgery and anatomy residing there, to have the care
of the education and government of students in the city of
New-York; and claimed the right of granting the degree of
*doctor of medicine,* and of granting and issuing *diplomas* of
such degree to all persons of lawful age, who should appear
to the trustees to have pursued their studies and attended the
lectures prescribed by law, and who should appear to them
to have distinguished themselves by their proficiency in med-
icine, surgery or anatomy, and to be worthy of such degree,
wheresoever such persons might reside, and whether they
had been sent to or admitted into the college or not. The
attorney general on the 4th May, 1829, filed an *information*
in the nature of a *quo warranto,* on the *relation* of Edward
G. Ludlow, against the trustees of the college, charging the
above facts, and averring that the liberties, privileges and
franchises so used and exercised by the trustees of the col-
lege were used and exercised without any lawful warrant,
authority, grant or charter, and were usurpations upon the
people of the state. The defendants appeared and put in a
plea substantially confessing the facts charged in the infor-
mation, and admitting that for the period of three years pre-

UTICA,
July, 1830.

The People
v.
Trustees of
Geneva Col-
lege.

vious to the filing of the information, they had used and en-
joyed the liberties, privileges and franchises above enumera-
ted, and had done so by virtue of a charter of incorporation
granted to Geneva college by the regents of the university of
the state of New-York. The attorney-general craved oyer
of the charter, by which it appears that on the 11th Febru-
ary, 1822, the trustees of *Geneva academy* presented a peti-
tion to the regents of the university, stating that they were
desirous of founding a college by ingrafting the same on the
said academy, *at or near the site of the village of Geneva, in
the county of Ontario,* and praying a grant of *college powers,*
to take effect upon certain conditions; and that afterwards,
on the 8th February, 1825, the trustees representing to the
regents that they had complied with the required conditions,
and praying to be incorparated, the regents *founded and es-
tablished a college in the village of Geneva,* giving to the trus-
tees, among other powers, that of appointing a president and
professors and tutors, to have the immediate care of the edu-
cation and government of the students who should be *sent to*
and *admitted into* said college for instruction and education;
and authorizing the trustees to grant such *degrees* to all per-
sons thought by them worthy thereof, as are known to and
usually granted by any university or college in Europe; and
after setting forth the act of incorporation of the college, the
attorney-general *demurred* to the plea. The defendants joined
in demurrer.

*Greene C. Bronson,* (attorney general,) for the people.
The defendants have in fact created a college in the city of
New-York, by the establishing of a medical faculty there, and
by the appointing of professors to take the care of the educa-
tion. and government of students in medicine, surgery and
anatomy. The power of founding and establishing colle-
ges in this state belongs to the regents of the university;
and such colleges, as well from the reason of the case as
from the purview of the act of the legislature conferring the
powers of the regents, necessarily are *local.* When applica-
tion is made to the regents for the incorporation of a col-
lege, the applicants are required to state *the place where,* the

UTICA,
July, 1830.
The People
v.
Trustees of
Geneva Col-
lege.

plan on which, and the funds with which it is intended to found and provide for the same. 2 *R. L.* 262, § 6. This was done in the present instance : Geneva was stated as the place where it was intended to found the college ; *in the village of Geneva* the college was founded and established by the act of incorporation, and the trustees were authorized to appoint professors to have the immediate care of the education and government of the students who should be *sent to* and *admitted into* the said college. Geneva college has not the power to establish a medical faculty in any place other than where itself is located. A corporation has no powers but such as are expressly granted or necessarily incident to the grant made. 4 *Wheaton,* 636. 2 *Cranch,* 166. 15 *Johns. R.* 383. 2 *Cowen,* 678. 5 *Conn. R.* 560. 1 *Bay's R.* 46, 382. 3 *Pick.* 282. 2 *Kent's Comm.* 226. 1 *Kyd on Corp.* 70. 3 *Barn. & Ald.* 1. 3 *Cowen,* 662.

The remedy in this case is by *quo warranto,* or by an information in the nature of a *quo warranto.* A *quo warranto* is in the nature of a writ of right for the sovereign against him who usurps or claims any franchises or liberties, to say by what authority he claims them. *Comyn's Dig. tit. Quo Warranto, A., Franchise, F.* 1. 2 *Black. Comm.* 37. Franchises are defined by Chief Justice *Spencer* to be immunities and privileges in which the public have an interest, as contra-distinguished from private rights, and which cannot be exercised without authority derived from the sovereign power, *The People* v. *Utica Ins. Co.* 15 *Johns. R.* 387 ; in which case, an information in the nature of a *quo warranto* was held to lie against an *insurance* company for carrying on *banking* operations without authority from the legislature. It lies also for an abuse of privileges, as well as for an usurpation of franchises. 2 *Johns. C. R.* 377.

*R. Emmett* and *D. B. Ogden,* for the defendants. The college of Geneva, it is admitted, is necessarily located by its charter in the village of Geneva ; but its location is no restriction upon its *power of granting degrees,* which is expressly given by its charter, in as full and ample a manner as it is possessed by any college or university in Europe. Degrees, by the terms of the charter, may be conferred upon any per-

UTICA,
July, 1830.

The People
v.
Trustees of
Geneva Col-
lege.

sons whom the trustees deem worthy thereof. It can be no objection to the exercise of such power, that the trustees are guided in the conferring of degree upon individuals who have distinguished themselves by their proficiency in particular sciences, by the recommendation of men eminent for their attainments in those sciences. Nor can it be an objection that the individuals on whose recommendation the trustees act are previously designated and denominated professors, and reside in a different place from where the college is situated. The *diplomas* are conferred *at* Geneva, and are thence issued. Besides, the degrees conferred are merely *honorary; they confer no rights.* An individual receiving the degree of doctor of medicine from a college cannot, in consequence thereof, be a practitioner of medicine ; he must, to be enabled to practice, conform to the laws regulating the practice of physic and surgery.

The remedy is misconceived. An information in the nature of a *quo warranto* will not lie because the establishing by Geneva college of a medical faculty and the appointment of professors in the city of New-York was not the use or enjoyment of a *franchise*, which, according to the definition of Chief Justice Spencer, quoted by the attorney general, is an immunity or privilege which cannot be exercised without authority derived from the sovereign power of the state. Cannot a school be established and professors appointed by a corporation or by individuals without authority from the state ? The only right of a university considered as a *franchise* is the conferring degrees. *Bacon's Abr. tit. University;* and they, it is conceded, cannot be conferred without authority from the state ; but that power in the present instance is expressly given. Whether the doing of certain acts be the exercise of a franchise or not, cannot depend upon the circumstance of its being done by a corporation. If done by an individual there would be no pretence of its being the exercise of a franchise; it is not such if done by a corporation. The exercise by a corporation of a power not conferred, or even prohibited, is not necessarily the use or exercise of a *franchise;* it is so only where the power exercised is such as cannot legitimately be used without authority from the

UTICA,
July, 1830.

The People
v.
[Trustees of
Geneva Col-
lege.

state. A corporation may do acts not within the scope or object of its creation, which will subject it to a forfeiture, but then the remedy is not by *quo warranto.* There being another remedy, leave to file the information would not have been granted. *The People* v. *The Hillsdale and Chatham Turnpike Company,* 2 *Johns. R.* 190. 1 *Salk.* 374. The information in this case is not warranted by the statute, 1 *R. L.* 108, authorizing an information at the *relation* of a person aggrieved; that statute is a transcript of 9 *Ann, ch.* 20, which has been holden to apply only to *officers,* and not to *corporations.* 2 *Burr.* 870. 1 *Wm. Black.* 187. The remedy must be under the statute or at common law; if under the statute, it should be against the *professors* and not against the *corporation;* if at common law, it should be by the attorney-general, *ex officio,* and there should be no *relator. Bull. N. P.* 211. 4 *T. R.* 240. *n.* In *England* the king is by law the visitor of all civil corporations, and his jurisdiction in that particular is exercised by means of the writ of *quo warranto* in the king's bench: with us the visitorial power as to all colleges, academies and schools is given to the regents of the univerity, 2 *R. L.* 261, § 3; and this court, therefore, have no jurisdiction in the matter.

*P. A. Jay,* in reply. If Geneva college has the right to establish a faculty of medicine in the city of New-York, she has an equal right to establish any other and as many other faculties in the different branches of science as is thought fit, and thus virtually to establish a college there or elsewhere; provided only that the trustees of the college hold their semi-annual meetings at Geneva, and grant their diplomas at that place. If the college of Geneva has this power, it is possessed by every other incorporated college in the state, and the act of founding one college was an extinction of the exclusive power, granted at an early day to the regents of the university, to found and establish colleges. Not only would a conflict of authority be thus created, but the incorporated colleges would possess a power not enjoyed by the regents, viz. that of establishing a college without any endowment whatever. By the act creating the board of regents of the university, they are the sole

UTICA,
July, 1830.

The People
v.
Trustees of
Geneva Col-
lege.

judges of *the place where, the plan on which, and the funds with which* it is intended to found and provide for a college. 2 *R. L.* 262, § 6. Unless the power claimed by Geneva college is expressly granted by its charter, or necessarily incident to the grant made, it cannot be exercised. The trustees are authorized to appoint professors to have the care of the education and government of the students of the college, *sent to* and *admitted into* the college : that is, *sent to* and *admitted into* the college founded and established in the village of Geneva, and not in the city of New-York. The power to confer degrees on individuals distinguished for their attainments in science, although not members of the college, is not denied ; but the exercise of such power, by granting diplomas to students of medicine in the city of New-York, on the pretence that they had been students of Geneva college, sent to and admitted into it, when in fact they never were so, is a palpable evasion.

The right to found colleges is a *franchise ;* it is granted by the legislature to the regents of the university, who alone can legally use and enjoy it. This franchise has been usurped by the college of Geneva by the establishment of " The Rutgers Medical Faculty of Geneva College" in the city of New-York, by the appointment of professors there and by the ratification of their acts, in granting diplomas to students educated under their care and government, and is expressly acknowledged in their plea, and claimed to be exercised as a franchise by virtue of their charter, although now it is denied. If an office is a franchise, the conferring of an office, i. e. the appointment of professors, is a franchise, and especially the appointment of professors to take charge of the education of youth, at a place so far removed as to be beyond the immediate superintendence and jurisdiction of the appointing power. The information in this case is good at common law if not under the statute, and the insertion of the name of a relator cannot hurt, at most it is but surplusage. 10 *Mass. Rep.* 290.

*By the Court,* SAVAGE, Ch. J. The questions presented for decision in this case are, 1. Whether the appointment by the defendants of a medical faculty in the city of New-York

UTICA,
July, 1830.

The People
v.
Trustees of
Geneva Col-
lege.

for the purpose of instruction in medicine is a franchise? 2. Whether Geneva college has power to exercise this franchise? and if not, 3. Whether the remedy sought in this case is the appropriate remedy?

In the case of *The People* v. *Utica Ins. Co.*, 15 *Johns. R.* 387, a franchise was defined by Spencer, justice, to be a privilege or immunity of a public nature, which cannot legally be exercised without legislative grant. To be a corporation is a franchise; the various powers conferred on corporations are franchises; the execution of a policy of insurance by an insurance company, and the issuing a bank note by an incorporated banking company are franchises. Without legislative authority, neither could lawfully be done by a corporation; and were a bank to execute a policy of insurance, or an insurance company to issue bank notes, such acts would be usurpations of franchises.

Corporations are granted as well for the purpose of promoting education, as for the purposes of facilitating commercial and other transactions. Corporations can exercise no powers but such as are granted expressly or incidentally. The defendants are a corporation for the purpose of instructing pupils in the arts and sciences. They have power to confer degrees which are evidence of the proficiency made by their pupils; they have power of course to appoint tutors and professors to teach those branches of learning which will qualify pupils for receiving diplomas; these are franchises, and cannot be exercised by a corporation without legislative authority. It is not denied that an individual may instruct pupils, and may employ teachers under him, and may call them professors, and may also give a certificate or diploma. But a diploma or degree of doctor of medicine from an individual, will not give its possessor a right to practice in this state as a physician: a diploma or degree from a college does give that right. The individual who confers a degree does not profess to act by legislative authority: the corporation does. The degree of the individual confers no privilege or immunity upon the pupil: the degree of the corporation does confer a privilege. Hence the same act, when

VOL. V. 28

UTICA,
July, 1830.

The People
v.
Trustees of
Geneva Col-
lege.

done by an individual, may be no franchise, yet is such when done by a corporation.

Before the passage of our restraining act, any individual or private association might issue negotiable notes for circulation like bank notes, but a corporation could not do so without legislative authority. Such act by the individual was no franchise, but by the corporation it was. The very existence of a corporation is a franchise, and every act of a corporation affecting the public is the exercise of a franchise. The appointment of professor is a franchise as well as the conferring of degrees. It is no answer to say that the college has a right to confer honorary degrees; it has a right to confer such degrees upon persons who are worthy of them, but I apprehend, were an incorporated college to confer such degrees upon persons not at all qualified, such acts by the corporation would be a misuser which would work a forfeiture. I cannot entertain a doubt that the appointment by a corporation of a medical faculty, in the city of New-York or in the village of Geneva, is the exercise of a franchise.

Have the defendants a right to exercise the franchise in the manner adopted by them?

They state the manner in which they became possessed of their corporate rights, whatever they are. The trustees of Geneva *academy* applied to the regents of the university, and being disposed to found a *college*, made known to the regents the *place where*, the plan on which, and the funds with which they intended to found and provide for said college. It does not appear that the original plan was to establish a faculty of the college in any other place than Geneva. In due time the regents of the university granted a charter, on the 8th of February, 1825, and did thereby grant and declare that a college for the instruction and education of youth in the learned languages and liberal arts and sciences should be and thereby was founded and established *in the village of Geneva.* They were created a body politic and corporate, and authorized to confer such degrees as are known and usually granted by any university or college in Europe. By virtue of this charter, they claim to exercise certain *franchises* contained

UTICA,
July, 1830.

The People
v.
Trustees of
Geneva Col-
lege.

in their plea. It would have been a sufficient answer to the objection of the defendants that the appointment of profes-sors in New-York is no franchise, to have said that they are concluded by their plea from denying that fact. They have themselves so denominated the rights and powers they claim. The question now is, whether their charter confers such au-thority.

In answering this question, we have only to recur to the fundamental principle relating to artificial beings—that they have such powers and capacities as are *given* to them, and none other. This corporation, by the very terms of its char-ter, is restricted as to *place*, as much so as is the Bank of Geneva. Suppose the Bank of Geneva were to establish an office of discount and deposit in the city of New-York, could they justify such a proceeding? It may be answered that the charter of this bank contains an express prohibition against carrying on business elsewhere; but without such prohibition, there could be no question on the subject, and it would be no answer to say that the bills are signed *in Ge-neva;* and yet the cases would be precisely parallel. The signing of the degree gives no more locality to the business of instruction, than the signing a bank bill does to the op-eration of discounting a note. It is *at Geneva,* if any where, that the defendants have an existence and the capacity to appoint professors and give instruction, as well as to sign the diploma. Corporations take nothing by implication; certain powers are indeed incidental to the principal business to be carried on, but the instruction of youth at Geneva by no means requires or justifies the establishment of a branch in the city of New-York. If one branch of the business may be carried on out of the village of Geneva, the whole may, and Geneva college may locate herself any where in the state; nay, in every town in the state. Such a claim would be preposterous and absurd, yet equally well founded in legal right with the claim we are now examining.

It was stated, by one of the counsel for the people, that it may well be doubted whether Geneva college has any legal corporate existence, not having been incorporated accord-ing to the provisions of the new constitution. That is, in-

UTICA,
July, 1830.

The People
v.
Trustees of
Geneva Col-
lege.

deed, a grave question, and must be well considered, if ever properly presented. The information in this case is not against certain persons assuming to exercise corporate powers without authority, but against a corporation claiming the exercise of powers not conferred upon it by its charter. That the college does not possess the power claimed, seems to me most manifest.

The only remaining inquiry is whether the proceeding by information in nature of a *quo warranto* is the proper remedy. The point seems to me to have been settled by the case of *The People* v. *The Utica Ins. Co.*, 15 *Johns. R.* 383. If the appointment of professors by an incorporated college is a franchise, the assertion of such right, unless justified by authority from the legislature, is the usurpation of a franchise; and that is the case to which the present proceeding is the appropriate remedy. The right here claimed is of a public nature; it affects the public at large. In that respect it differs widely from the case of *The People* v. *The Hillsdale and Chatham Turnpike Company*, 2 *Johns. R.* 190. There the court refused leave to file an information, because the public was in no way interested; the controversy was between the defendants and an individual upon whom they were trespassing and to whom the courts were open, and no difficulty existed as to his remedy by suit. Here there is no remedy by suit; no individual in particular is aggrieved; but the public at large are affected. The authority of the legislature is put in defiance by a creature of their own creation. In this respect the revised statutes, I apprehend, are but declaratory of what the law was. 2 *R. S.* 583, § 39. An information in the nature of a *quo warranto* may also be filed by the attorney general, upon his own relation, on leave granted against any corporate body, whenever it shall exercise any franchise or privilege not conferred upon it by law.

It was unnecessary to have filed this information upon the relation of any one; but it is not vitiated thereby: the statement of a relator is mere surplusage.

The plaintiffs are entitled to judgment upon the demurrer.