State, Danforth, pros., v. City of Paterson.

THE STATE, CHARLES DANFORTH, PROSECUTOR, v. THE
MAYOR AND ALDERMEN OF THE CITY OF PATERSON,
DEFENDANTS.

1. Section one hundred and seventy-five of the charter of the city of
Paterson, directing the mayor and aldermen to appoint three commis-
sioners to purchase and contract for certain public improvements, is
not repugnant to other sections authorizing the mayor and aldermen
to make such improvements.
2. The court will give effect to every part of a statute, if possible.
3. Where judgment and discretion are required of municipal officers
they cannot be delegated without express legislative authority.
4. Under section one hundred and sixty-seven the mayor and aldermen
must select the sites for public markets, the architect, and plans; the
commissioners are merely ministerial officers and agents to make pur-
chases and contracts.
5. The resolution of June 28th, 1869, appointing three commissioners to
purchase a site and build a public market thereon, is in excess of the
authority given by the charter, and void.
6. It is not necessary for a person to wait until his liability is fixed be-
fore he can have redress. It is enough that he may be affected by an
illegal ordinance or resolution to entitle him to a hearing, before any
attempt has been made to enforce it.
*Quere?*—Whether in this case the proper remedy is by *certiorari*. SCUD-
DER, J.

On *certiorari* to remove resolution, &c.

On the 28th of June, 1869, the following resolution was
adopted by the mayor and aldermen of the city of Paterson,
*viz.:*

" WHEREAS, the city charter does empower the mayor and
aldermen of the city of Paterson to purchase grounds
whereon to build a public market; therefore, be it

"*Resolved,* That the mayor and aldermen of the city of
Paterson, deeming it right and expedient that the city should
own a public market, this board do now, in accordance with
the one hundred and seventy-fifth section, title ten, of the
city charter, appoint Philip Rafferty, William G. Watson, and

George Christie, commissioners, to proceed in the premises according to law, and purchase a site and build a public market thereon."

The prosecutor, being a tax-payer in the said city of Paterson, sued out this writ to remove the proceedings into this court, and assigned the following reasons for setting the same aside:

1. Because the resolution was adopted under the supposed authority conferred upon the said mayor, aldermen, &c., by the one hundred and seventy-fifth section of an act of the legislature entitled "An act for further revising and amending the act to incorporate the city of Paterson," approved March 25th, 1869; and the said defendants have no power under said act or any other law of this state, to appoint the said commissioners to purchase a site for a public market in the city of Paterson nor build the same thereon.

2. The commissioners have no power to purchase or build or act in the premises.

3. The said defendants did not determine, by ordinance or otherwise, before appointing said commissioners, that a public market should be established, nor where it should be located, or at what cost.

4. Because the said commissioners have no power to determine what amount of money shall be appropriated for building a market nor to determine upon any site for the same. And also that the said act of the legislature was unconstitutionally passed; and that the one hundred and seventy-fifth section of the same is unconstitutional and repugnant to the rest of the act.

The case was argued before BEDLE, DALRIMPLE, and SCUDDER, Justices.

For the prosecutor, *S. Tuttle* and *J. P. Bradley*.

For defendants, *A. B. Woodruff* and *T. N. McCarter*.

SCUDDER, J.   The board of aldermen of the city of Paterson, on June 28th, 1869, passed the following resolution, *viz.* :
" WHEREAS, the city charter does empower the mayor and aldermen of the city of Paterson to purchase grounds whereon to build a public market; therefore, be it
" *Resolved*, That the mayor and aldermen of the city of Paterson, deeming it right and expedient that the city should own a public market, this board do now, in accordance with the one hundred and seventy-fifth section, title ten, of the city charter, appoint Philip Rafferty, William G. Watson, and George Christie, commissioners, to proceed in the premises according to law, and purchase a site and build a public market thereon."

It is admitted for the purposes of this case, although the return is not complete, that the resolution was regularly passed and approved according to the requirements of the charter.

The prosecutor, Charles Danforth, a citizen, property owner, and tax-payer of Paterson has, by *certiorari*, brought this resolution into this court to determine its legality.

Waiving for the present the consideration of several preliminary questions raised on the argument, let us consider the proper legal construction of the one hundred and seventy-fifth section of the charter referred to in the resolution, and afterwards the form of the resolution itself.

This section (*Laws* 1869, *p.* 769,) enacts " that for the purpose of carrying out and effecting the purposes and objects provided for and authorized in the one hundred and sixty-fifth, one hundred and sixty-seventh, one hundred and seventy-first, one hundred and seventy-second, and one hundred and seventy-third sections of this act, the mayor and aldermen of said city are hereby authorized and directed whenever they shall decide to carry out and effect such purposes and objects, or any of them, to appoint three discreet persons, residents and citizens of said city, as commissioners, who shall have full power and authority on behalf of, and in the name of said mayor and aldermen, to make all contracts and purchases, and to transact and perform all

business necessary in relation thereto, or connected with any of such purposes and objects; and the acts and contracts so made by said commissioners and by them reported to the board of aldermen, shall be binding upon such mayor and aldermen, and upon the said city, as fully and completely as if they had been made directly by said mayor and aldermen; the said commissioners shall not be selected from among the board of aldermen, and shall not belong to the same political party, and they shall, before entering upon the performance of their duties, each subscribe and take an oath or affirmation for the faithful performance of their duties, and file the same with the city clerk."

The sections referred to in this one hundred and seventy-fifth section all relate to certain public improvements, *viz.*, section one hundred and sixty-five, to public parks; section one hundred and sixty-seven, to a city hall and other buildings, and public markets; section one hundred and seventy-one, to water works; and sections one hundred and seventy-two and one hundred and seventy-three, to gas works.

The resolution of the board of aldermen in question purports to give effect to that part of the one hundred and sixty-seventh section which authorizes the purchase and erection of a public market. The entire section enacts as follows: "That the mayor and aldermen of the city of Paterson are hereby authorized and empowered to purchase a city hall or other buildings, *or to purchase a suitable site or sites, and erect thereon one or more public markets*, city hall, or other public buildings, and to employ *suitable* architects, engineers, and other persons necessary to accomplish the purpose hereby contemplated, and to pass all such ordinances, rules, regulations and by-laws, for the establishment, maintenance, using, renting, and governing said markets, city hall, or other public buildings, as they may deem proper."

It is said that this one hundred and seventy-fifth section is repugnant not only to the above sections authorizing these public improvements, but also to the entire purview of the charter, which is intended to establish a municipal govern-

State, Danforth, pros., v. City of Paterson.

ment under the control of a mayor and board of aldermen, elected by and responsible to the people, whereas this section delegates the whole power to three commissioners, whom the mayor and aldermen are directed to appoint, and who are responsible to no one. It is thereupon argued, with great force, that there cannot be two sets of public officers existing at the same time and charged with the same duties, without such repugnancy as to annul one, or possibly both, and that where such inconsistency exists, the court must adopt that which is more consistent with the general scope and purpose of the act.

This conclusion is right, if the premises are correct. An important rule of statutory interpretation, however, is, that the court shall give effect to every part of the statute if possible, *ut res magis valeat quam pereat.* 1 *Black. Com.* 89 ; 6 *Bac. Ab.* 380 ; *Smith's Com.*, § 575.

Let us, therefore, carefully consider the alleged repugnancy. The charter establishes a municipal corporation, by the corporate title of " The Mayor and Aldermen of the City of Paterson." The aldermen elected in the several wards of the city constitute " The Board of Aldermen of the City of Paterson." This is the council or legislative body, and the mayor approves their ordinances as the executive head.

In the enumeration of the several powers conferred on the board of aldermen, found in the twenty-third section of the charter, under sub-division seventeen, it will be seen that they have the general power to " erect, establish, and regulate public markets."

In the one hundred and sixty-seventh section it is enacted that the *mayor and aldermen* of the city of Paterson are authorized to purchase a suitable site or sites, and erect thereon one or more public markets. This legislative power and discretion are to be exercised through the board of aldermen, as we have already seen in the twenty-third section. They are to purchase a *suitable* site or sites, and erect thereon one or more public markets, and to employ *suitable* archi-

tects, engineers, and *other persons* necessary to accomplish these purposes.

They are herein required to use judgment and discretion in determining the suitableness of the site, and also of the architect, engineer, and other persons employed to accomplish the purpose. This they must use, and cannot delegate to others without express legislative authority. *Lyon* v. *Jerome,* 26 *Wend.* 485; *New York* v. *City of New York,* 3 *Duer* 119, 131.

How far is this authority given in the one hundred and seventy-fifth section?

The mayor and aldermen are therein authorized and directed, whenever they shall decide to carry out and effect these purposes and objects, or any of them, to appoint three discreet persons, who shall have power and authority, on behalf of and in the name of said mayor and aldermen, to make all contracts and purchases, and to transact all business necessary in relation thereto, &c., and their acts and contracts shall be binding on the corporation, as if made directly by the mayor and aldermen.

There is here, in my opinion, no necessary conflict of authority or of action. The board of aldermen must select a suitable site; they must select suitable architects and engineers. When the lot, and the plan and specifications are thus determined, then the board of aldermen are directed to appoint three commissioners, with certain qualifications, to contract and purchase, and to carry out the objects thus defined and settled. This construction, it appears to me, harmonizes the two sections. The commissioners become the ministerial officers and agents of the corporation to carry out its resolves for a specified work. Upon report by them made, their contracts and purchases become binding on the city, and the board provides the funds for payment, according to the terms of the charter.

There is one other section, however, which appears to conflict with this construction. Section one hundred and twelve of the charter enacts that all contracts for doing work

or furnishing materials for the improvements provided for in the act shall be given to the lowest bidder; that security shall be given, and they shall be read and approved by the board of aldermen and mayor, and entered into the contract book. The terms used are general enough to include the improvements named in the one hundred and seventy-fifth section, and might be construed to designate the method of contracting for work and materials to be observed by the commissioners. But the requirement of previous approval by the aldermen and the mayor are manifestly irreconcilable. It will be noticed in reading the charter, that this one hundred and twelfth section is under title eighth, relating to streets, and that is its immediate connection. But even if the general expressions used in the section should be extended beyond that connection and be held to apply to other public improvements, it was competent for the legislature to except by a subsequent section, any special class of improvements out of this general form of contracting.

We need not resort to the technical law concerning provisos and saving clauses, which it is difficult to reconcile. There is here no such repugnancy as to destroy the one hundred and twelfth section, by permitting the commissioners to contract and purchase in their discretion. There are other improvements left upon which it can act, and this special authority given to others to contract differently in special cases, is but an exception, or in the nature of a proviso, entirely consistent with the general purview of the act, and therefore valid. *Sedg. Stat. & Const. Law*, 60, 61; 1 *Kent's Com.* 463; *Savings Inst.* v. *Maklin*, 23 *Maine* 360. Having thus considered the one hundred and seventy-fifth section in its relation to the one hundred and sixty-seventh section and the general terms of the charter, it remains to consider the form of the resolution itself.

It is manifest that the mayor and aldermen of Paterson have not selected a suitable site or sites, and that they have not employed suitable architects, and prepared plans and specifications for the proposed market, but in this resolution

they have delegated these important duties to the commissioners. This they cannot do, and the resolution is fatally defective in these particulars. They are appointed in general terms to proceed according to law, and purchase a site and build a public market thereon. The whole subject is therefore left to their discretion; after determining that they deem it right and expedient that the city should own a market, and appointing three commissioners to purchase land and build, the mayor and aldermen have supposed their duties were fulfilled, until it should become necessary to provide funds for the payment of the contracts and purchases of the commissioners. In this they have erred.

The power and discretion given to them to appoint these commissioners is in derogation of their general authority to control and manage the affairs of the city, and must be construed strictly. It must appear that in exercising this authority the board of aldermen have not gone beyond the power conferred. It is necessary that courts should watch with the most jealous care the appointment of any such commission, however good may be the character of the persons appointed, where the authority conferred is so great, and some of the ordinary securities are omitted. The charge will be laid heavily upon the property of the citizens for the payment of the proposed improvements, and it must appear that every requirement has been observed.

The resolution is not within the terms of the charter, in the particulars above stated, and is therefore null and void.

Having thus determined the main point in this case, it is not important to consider at length the formal questions raised on the argument.

It is said that the prosecutor has no standing in this court; that he has not shown that anything has been done or will be done to injure him; that his action is premature; that the time for him to act is when the commissioners begin to contract and purchase under the resolution; that the mere enactment of this ordinance or resolution does him no harm,

State, Danforth, pros., v. City of Paterson.

and he cannot thus interfere with or suspend the appropriate duties of the board of aldermen.

The *certiorari* having been allowed, and the parties being actually present in court, there should be good cause shown to induce the court to send the prosecutor away without hearing his complaint and determining his right.

There are precedents for a similar use of this writ. It is not necessary for a person to wait until his liability is fixed before he can have redress. It is enough that he may be affected by an illegal ordinance or resolution to entitle him to a hearing, before any attempt has been made to enforce it. *State* v. *Jersey City,* 5 *Dutcher* 170 ; *State* v. *Albright, Spen.* 644.

It is reasonable to suppose that what the board of aldermen have resolved shall be done, and what they have appointed commissioners to do, will be done. And if, as is contemplated by this resolution, purchases and contracts are made, the prosecutor and his property will be charged, or at least a claim made upon him for his proportionate share as a tax-payer. If bonds should be issued for the proposed improvements, under the one hundred and sixty-eighth section of the charter, the credit of the city, and all the real and personal property therein, will be pledged for the payment of said bonds. This degree of responsibility is sufficient to give the prosecutor the right to resort to this court for relief.

Upon another point questioning the jurisdiction of the court in this case upon *certiorari*, because, as it is alleged, the resolution is legislative, not judicial, in its character, I have doubt ; but inasmuch as this important question was not fully discussed on the argument, and my associates see no difficulty in maintaining this jurisdiction, I am willing to waive the consideration of this point until it is more distinctly raised, for the purpose of deciding the merits of this case upon a matter affecting the public interest and a large number of the citizens of this state.

BEDLE and DALRIMPLE, Justices, concurred.

CITED *in State, Kean, pros.,* v. *Bronson,* 6 *Vr.* 472 ; *State, Montgomery, pros.,* v. *Trenton,* 7 *Vr.* 85 ; *State, Hoxsey, pros.,* v. *Paterson,* 10 *Vr.* 493.