# The Commonwealth *versus* The Commercial Bank of Pennsylvania.

An information upon which a writ of *quo warranto* is founded, is amendable either on or at any time before the trial. Therefore objections to mere matter of form in the information which may be removed by amendment, do not furnish a ground for quashing the writ.

The law of Pennsylvania in regard to the form of pleading in *quo warrrnto* remains as it was before the Act of 1836. The attorney-general may disclose in his information the specific ground of forfeiture, or he may merely set forth the franchises alleged to have been illegally exercised, and call upon the defendant to show by what authority they are held.

The constant and wilful violation by a bank of the fundamental conditions upon which the charter was granted, entitles the Commonwealth to demand the forfeiture of its franchises. Abuses of this kind are of such magnitude, and affect the public so injuriously, that, when wilfully persisted in, it becomes a duty of high obligation on the part of those in authority rigidly to enforce the forfeiture.

Where a bank is prohibited by its charter from making loans at a greater rate of discount than one-half of one per centum for .thirty days, and from dealing in promissory notes; if it wilfully violates these restrictions by discounting at higher rates than that allowed, or by dealing in promissory notes otherwise than by discounting them at the rate prescribed, such acts constitute a good ground of forfeiture.

THIS was a motion to quash a writ of *quo warranto* issued out of this court, at the relation of the Attorney-General against the Commercial Bank of Pennsylvania.

The information upon which the writ had issued charged that the bank had been incorporated by an Act of Assembly passed 21st March, 1814; that in and by said act it was expressly enacted and declared to be a fundamental article of said corporation, that the rate of discount at which loans might be made by the said corporation should not exceed one-half of one per centum for thirty days; that in and by said act it was also expressly enacted and declared to be a fundamental article of said corporation, that the said corporation should not deal or trade in anything but bills of exchange, gold or silver bullion, stocks of banks incorporated by the state of Pennsylvania, and United States treasury notes, or

[The Commonwealth *v.* The Commercial Bank.]

goods pledged to the said corporation for money lent and not redeemed in due time, or goods which might be the produce of their lands; that by an Act passed 25th March, 1824, the charter of said bank was continued to the 1st Wednesday of May, 1835; that by several subsequent acts, viz. 2d March, 1831, 26th April, 1844, and 2d April, 1849, the said charter had been further continued from time to time by the legislature, *subject* to all the provisions, restrictions, and limitations contained in the original act of incorporation; that the said bank had repeatedly violated and broken the fundamental articles of their act of incorporation, and greatly perverted and abused their corporate powers in this, that for many months past the said bank had been in the constant practice of discounting promissory notes at exorbitant and usurious rates of interest, far exceeding the rate of one-half of one per centum for thirty days; that the said bank received, in the month of May, 1854, $2115.50 for such usurious, unlawful, and prohibited discount; in the month of June, $1845.50; in July, $2213; in August, $1727.50; in September, $1160; in October, $2040; that between May and October the said bank received between eleven and twelve thousand dollars, profits made exclusively from usurious discounts of promissory notes. That the said bank had also for a long time past, to wit, from the 1st May, 1854, been engaged in dealing in promissory notes contrary to the express prohibition contained in the fundamental articles of incorporation. That the said bank, in committing the several unlawful acts aforesaid, have wilfully abused their corporate powers, perverted the objects for which they were incorporated, usurped powers and functions which were expressly prohibited to them in their fundamental law, and by reason of the said abuses, usurpations, and unlawful acts, have forfeited the corporate rights and franchises conferred upon them by the several Acts of Assembly aforesaid.

The defendants filed the following reasons in support of their motion to quash the writ of *quo warranto*:—

1. Because the suggestion does not set forth with legal precision the facts upon which is founded the charge of the said supposed usury.

2. Because the suggestion is defective in this—that it sets forth legal conclusions instead of facts—that it sets forth, instead of specific offences against the charter, vague and undefined generalities not capable of being met and answered.

3. Because the case set up is not a case of forfeiture under the law.

4. Because, if it were a case of forfeiture, the discretion of the court would induce them to forbear the imposition of so great a penalty upon the offence laid.

5. Because there is not to be found in the case anything to lead

[The Commonwealth v. The Commercial Bank.]

the court in the discretionary exercise of their authority over the writ to grant a rule.

Upon the calling of the motion the counsel for the Commonwealth moved for leave to amend their information by adding twelve additional counts, which set forth the offences charged in the original information in a variety of ways.

*E. Waln, C. Ingersoll,* and *W. M. Meredith,* for the Bank.— An information for a forfeiture ought to be certain. The cause of forfeiture ought to be set out in its essential circumstances of time, place, and overt acts: Rex *v.* Gall, 3 *Salk.* 200, 4 *Com. Dig.* 562; Attorney-General *v.* The Petersburg Railroad Company, 6 *Iredell* 456; The People *v.* The Manhattan Company, 9 *Wend.* 351; People *v.* The Kingston Company, 23 *Wend.* 193. In a declaration for usury it is necessary to set out all the facts with particularity: 3 *Ch. Pl.* 273. The offences ought to be charged with precision: otherwise we cannot know what to answer. But if the facts are sufficiently alleged, they do not show cause for forfeiture of the charter: The State *v.* The Commercial Bank of Cincinnati, 10 *Ohio* 540; Rex *v.* The Mayor of Hartford, 1 *Ld. Raym.* 426. They have their remedy for usury, and should proceed for the penalty. The franchises of the corporation ought not to be taken away for acts of the officers, of which the stockholders may have been ignorant. The court in their discretion would not visit the offences charged with a penalty so heavy as that of forfeiture.

*M. Russell Thayer, St. George T. Campbell,* and *The Attorney-General,* for the Commonwealth.—Here is a good cause of action shown. If it be defectively set out, the defendants ought to demur. The Commonwealth could then amend. She cannot be deprived of her right of amendment by substituting a motion to quash in place of a special demurrer, which is the regular method of taking advantage of want of precision in the pleadings. Even criminal informations are amendable on motion at any time before trial, and for that reason will not be quashed on motion: Rex *v.* Wilkes, 4 *Burr.* 2527; *Cole on Inj.* 84; *Ib.* 207; 1 *Chit. C. L.* 868; Rex *v.* Nixon, 1 *Str.* 185; Rex *v.* Gregory, 1 *Salk.* 372; Rex *v.* Holland, 4 *T. R.* 457; Rex *v.* Chulesworth, 2 *Str.* 871; Rex *v.* Birch, 4 *T. R.* 610; Rex *v.* Gaines, 4 *Burr.* 2147. But this, although a criminal proceeding in form, is in substance but a civil one. The sole object is to try a civil right: Commonwealth *v.* Commissioners of Philadelphia, 1 *S. & R.* 382; Respublica *v.* Wray, 3 *Dal.* 490; Commonwealth *v.* McCluskey, 2 *R.* 381; and it is amendable at any time: Commonwealth *v.* Gill, 3 *Wh.* 228. In no case can a writ be quashed for defects which are amendable on motion. The defendant must plead or demur.

[The Commonwealth *v.* The Commercial Bank.]

But the suggestion is sufficiently certain. It sets out the violation of the Act of Assembly with all the certainty which the nature of the transactions requires: The Emily, 9 *Wheat.* 381; The Merino, *Ib.* 391; People *v.* Bank of Hudson, 6 *Cowen* 217; State Bank *v.* The State, 1 *Blackf. Ind. Rep.* 277; Commercial Bank *v.* State of Mississippi, 6 *Smedes & Marshall R.* 600; Corwin *v.* The Urbanna Insurance Company, 14 *Ohio R.* 7.

The offences charged are clearly ground of forfeiture. It is a wilful violation of the very letter of the charter. When a corporation abuses its franchise, it breaks the condition on which it was incorporated, and forfeits its right to existence: 1 *Bl. Com.* 485; 2 *Inst.* 496; 3 *Cruise* 307; 2 *Hawk. P. C.* ch. 11, § 5; 6 *B. & C.* 703; 11 *Vermont* 431; 23 *Wend.* 254; *Ib.* 222; 19 *Johns.* 456; 9 *Cranch* 51; 8 *Peters* 287; 6 *Iredell* 469; 8 *Vermont* 489; 6 *Cowen* 217; 1 *Ohio St. R.* 298; 1 *Blackf. Ind. R.* 277.

The acts of their officers are their acts, and to excuse them on that ground would be to extend unlimited impunity to insubordinate corporations.

The opinion of the court was delivered by

LEWIS, C. J. —A writ of *quo warranto* having issued against the Commercial Bank, upon a suggestion filed by the attorney-general, alleging that the bank had forfeited its charter by certain acts of misuser, the present motion was made to quash the writ. A number of reasons have been assigned in support of the motion, but they may be resolved into two. One goes to the formal defects in the manner of setting forth the complaint; the other to the merits, and raises the question, whether the acts complained of are sufficient to entitle the Commonwealth to demand a forfeiture of the charter. It is clear that if the Commonwealth has the right to amend the information, either on or at any time before trial, she cannot be put out of court and thus deprived of that right by a summary motion to quash for mere defects of form in the suggestion. In England, an information, even where the object is the punishment of a criminal offence, is not like an indictment, which is the finding of the grand jury and therefore cannot be altered in substance by amendments; but informations may be amended at any time before trial: 1 *Str.* 185; 2 *Str.* 871; 1 *Salk.* 371; 4 *T. R.* 610; 4 *Burrow* 2147. For this reason they will not be quashed on the motion of the defendant, except it appear that the court had no jurisdiction to try them: 1 *Chit. Crim. Law* 868–9. If this be the rule in England, even in informations for criminal offences, we see no reason why the right to amend should not be allowed with great liberality in this country, in cases designed solely for the determination of civil rights. Such is the character of the proceeding now before us: 1 *S. & R.* 382. We are of the opinion that the Commonwealth has the right to amend in this

[The Commonwealth v. The Commercial Bank.]

case, either on or at any time before the trial. It follows, that objections to matters of form, which may be removed by amendment, do not furnish a ground for quashing the writ. In connexion with this branch of the case, it seems proper to bear in mind that the Act of the 14th June, 1836, does not require the suggestion to set forth the facts more fully than had *theretofore* been required in informations. In this respect it differs from the North Carolina Statute of 1831, which requires the information to set forth the grounds of forfeiture, and was designed to have the whole matter of accusation specified at once in the information: 6 *Iredell* 461. The law of this state, in regard to the form of pleading in cases of this kind, remains as it was before the Act of 1836. The attorney-general may disclose in his information the specific ground of forfeiture, or he may merely set forth the franchises alleged to have been illegally exercised, and call upon the defendant to show by what authority they are held. The plea should either deny the facts or set forth the authority. The replication may then allege the acts relied on as working a forfeiture. This may be denied or demurred to by the defendant: 3 *Hargr. St. T.* 545; 2 *T. R.* 515; 10 *Ohio Rep.* 548; 6 *Cowen* 209. By the amendments offered, the Commonwealth proposes to adopt the latter course. If these amendments be allowed, all the grounds for the motion to quash are removed until the defendant, by plea, puts itself in a condition to require that the acts of forfeiture be set forth in the replication. But the record shows that it is intended to be urged as a ground of forfeiture, that the defendant made loans at rates of discount exceeding one-half of one per cent. for thirty days. This is set forth in the *tenth* count of the proposed amendments. In the *seventh* count of these amendments the defendant is charged with discounting promissory notes, and "receiving usurious, unlawful, and prohibited interest or discount" for so doing. In this count forty-seven distinct offences of this character are charged upon forty-seven distinct occasions, giving the date of each transaction and the amount of usurious interest received on each occasion. In the eleventh and twelfth counts of the proposed amendments, the defendant is charged with discounting bills of exchange at a greater rate of discount than one-half of one per cent. for thirty days. In the original suggestion it is charged that the defendants, *for many months past,* have been in "*the constant practice* of discounting promissory notes at exorbitant and usurious rates of interest far exceeding the rate of one-half of one per cent. for thirty days," and large sums of money are specified as having been received on such transactions during the several months particularly stated. It is further charged in the original suggestion that the defendant has been "for a long time past, to wit, from the 1st May, 1854, engaged in dealing in promissory notes, contrary to the express prohibi-

tion contained in the fundamental articles of incorporation." It is further alleged that in these acts the said bank has " wilfully abused its corporate powers and functions." The first question which arises is, are these acts contrary to the defendant's charter? It must be remembered that a private corporation can claim no powers except those expressly granted and such others as are necessary to the exercise of the powers thus granted. The Act of 2d April, 1849, extended the charter previously granted to the Commercial Bank of Pennsylvania, subject to all general laws not altered or supplied by the act to extend the charter of the Farmers' and Mechanics' Bank, passed 16th March, 1849. · That act does not alter or supply the 12th and 14th Articles set forth in the original Act of Incorporation of 21st March, 1814, and repeated in the subsequent Act of 25th March, 1824. The 12th Article declares, that " the rate of discount at which loans may be made" by the said corporation, " shall not exceed one-half of one per cent. for thirty days." By the 14th Article, it is among other matters provided, that the said bank shall not deal or trade in anything but bills of exchange, gold or silver bullion, and other specified articles not material to the consideration of the present motion. The right to deal in bills of exchange is expressly recognised in the charter.

The bank may, therefore, purchase them in good faith at the current rates of exchange, although those rates may greatly exceed one-half of one per cent. for thirty days. But if the purchase of a bill of exchange is merely a device to obtain a greater rate of interest than the bank is authorized by law to receive, it is as much a violation of the act of incorporation, as a direct loan at the prohibited rate. If a bill be payable at the place where it is purchased, or at a place which has the current rate of exchange in its favour, or if there is any understanding that it is not to be paid at the place designated but to be renewed, it would be difficult to reconcile the charge of a premium for exchange above the prescribed rates of discount for loans with anything like good faith. So where a sum is charged notoriously above the current rates of exchange, the same difficulty would exist. No form can be given to a prohibited act which will make it valid, if the intention be to evade and violate the law. That intention should, however, be alleged in the pleading, where it is relied on as invalidating a transaction good in point of form; and the jury are to decide upon its existence as a matter of fact. It was declared by the Supreme Court of Ohio, that " to allow a device of this nature to defeat a salutary provision of law, and to sanctify usury by banks, would be equivalent in many cases to relieving them from all restraint :" Miami Exporting Company *v.* Clark, 13 *Ohio Rep.* 16. But it is not alleged in the suggestion that the bills of exchange referred to were purchased with intent to evade the pro-

[The Commonwealth v. The Commercial Bank.]

hibition against making loans at a greater rate than that fixed by the charter. There is nothing, therefore, in the mere purchase of these bills as stated in the suggestion proposed to be filed as an amendment, which we can declare to be contrary to the charter of the bank. The right to make loans by discounting promissory notes at the rate prescribed is plainly deducible from the terms and objects of the act of incorporation; but the right otherwise to deal in promissory notes, or to make loans at a higher rate than that prescribed, does not exist. These acts are expressly prohibited in the fundamental articles. The question then arises, do these constant and wilful violations of the fundamental conditions upon which the charter was granted, entitle the Commonwealth to demand its forfeiture? The question is not whether a single act, or even a series of acts of misuser, through inadvertence or mistake, may work a forfeiture, but whether the constant and wilful violation of these important conditions of the grant produce that effect? Mr. Justice STORY, in delivering the judgment of the Supreme Court of the United States in Mumma v. Potomac Company, held, that "a corporation, by the very terms and nature of its political existence, is subject to dissolution by forfeiture of its franchises for wilful misuser, or nonuser:" 8 *Peters' Rep.* 287. Many years before that decision was pronounced, the same principle was fully recognised by the same high authority in Truett *et al. v.* Taylor *et al.*, 9 *Cranch* 43, where the right of forfeiture for misuser or nonuser was held to be "the common law of the land, and a tacit condition annexed to the creation of *every* corporation." It is now well settled by numerous authorities, that it is a tacit condition of a grant of incorporation that the grantees shall act up to the end or design for which they were incorporated; and hence, through neglect or abuse of its franchises, a corporation may forfeit its charter, as for condition broken, or for a breach of trust: see *Angell and Ames on Corporations*, p. 660, and the cases there cited. In the Attorney-General *v.* Petersburg and Roanoke Railroad Company, 6 *Iredell* 461, it was held that the *omission* of an *express* duty prescribed by charter is a cause of forfeiture, and that as *implied powers* are as much protected by law as those which are expressed, *implied duties* are equally obligatory with duties expressed, and their breach is visited by the same consequences: 6 *Iredell* 461. It may be affirmed as a general principle, that where there has been a misuser, or a nonuser, in regard to matters which are of the essence of the contract between the corporation and the state, and the acts or omissions complained of have been repeated and wilful, they constitute a just ground of forfeiture.

The banks of this state have been clothed with the high and important privilege of creating a circulating medium by substituting their own promises to pay as a currency, in the place of gold

[The Commonwealth *v.* The Commercial Bank.]

and silver coin.  This privilege is one of great profit, and is protected and enhanced in value by excluding the citizens at large from all participation in it.  The main object in creating these monopolies was to enable them to furnish facilities to the business community, by means of loans at the rates prescribed.  So important was this object in the view of the legislature, that, although the bank in question was located in the midst of a *commercial* population, it was required by the original acts of incorporation that the *farmers, mechanics,* and *manufacturers,* although not engaged in commercial pursuits, should be entitled to loans at six per cent., to the amount of one-fifth of the capital paid in; and the state secured to herself a similar accommodation to the amount of one-tenth of the capital.  If the banks were allowed to purchase promissory notes at a greater rate of discount than that allowed in the case of loans, the temptation to appropriate their resources to that business to the entire exclusion of loans at the specified rate, would be irresistible.  There is no reason to expect of them a voluntary devotion to the public interest to the neglect of that of the stockholders.  It would, therefore, always happen that, in times of financial stringency, when the community most needed loans from them at moderate rates, their means would be employed in the more profitable business of purchasing paper at rates ruinous to their customers.  Thus the main object of their creation would be defeated.  To prevent this, it was wisely provided in the charter of the bank before us, that it should not deal in anything but the articles therein enumerated; and promissory notes are not among them.  The state had a right to impose these restrictions as a consideration for the profitable privileges withdrawn from the people and given to the banks.  The people have therefore an undoubted interest in the proper application of the currency thus established by their authority.  Their welfare absolutely requires that those intrusted with the high power of creating it, shall appropriate it, in good faith, to the object for which it was designed.  It is true, that we have an instance in a neighbouring state of some banking institutions, incorporated with liberty " to make loans on such terms as the directors may deem expedient;" and under such a charter the courts were obliged to hold that they might make loans *at any rate of interest agreed upon,* without violating or forfeiting their charters: 10 *Ohio Rep.* 535; 14 *Ohio Rep.* 10.  But the legislature of this state has not been guilty of any such indiscretion in regard to the institution before us.  The charter fixes the rate of interest on loans, and expressly prohibits the taking of a higher rate.  It also, as we have seen, prohibits the bank from dealing in promissory notes. We have no doubt that a violation of the charter, in either of these particulars, defeats the chief object of the grant, and is good ground for demanding judgment of forfeiture.  These abuses are

[The Commonwealth *v.* The Commercial Bank.]

of such magnitude, and affect the public so injuriously, that, when wilfully persisted in, it becomes a duty of high obligation on the part of those in authority, rigidly to enforce the forfeiture.

These are the views at present entertained. We have been obliged to express them in order to dispose of this motion. But the question, whether the acts complained of amount to a forfeiture of the charter, will be open to further investigation in the final decision of the cause.

The motion to quash the writ of *quo warranto* is overruled.