A. J. NELSON et al., Appellees, v. CONSOLIDATED INDEPENDENT SCHOOL DISTRICT OF TROY MILLS et al., Appellants.

**QUO WARRANTO:** Nature and Grounds—Illegality in Corporate
1 Organization—Schools and School Districts. An information in the nature of *quo warranto* is the *exclusive* remedy to test the legality of the organization of a corporation. So held as to a public school corporation. (Sec. 4313, Code, 1897.)

EVANS and SALINGER, JJ., dissent.

**QUO WARRANTO:** Proceedings, Etc.—Parties—Pleading. In an
2 action against a corporation by information in the nature of *quo warranto* to test the legality of its organization, the act of making the so-called corporation a party defendant is not an admission of its corporate existence, in the face of a definite allegation to the contrary.

**INJUNCTION:** Nature and Grounds—Illegality of Corporate Or-
3 ganization. An action in equity to test the legality of the organization of a school corporation, with prayer for injunctional relief, is not the *allowable* remedy, even though such action be transferred to the law side of the calendar.

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

THURSDAY, OCTOBER 25, 1917.

THIS is a proceeding in equity to test the legality of an acting school corporation. The plaintiffs are taxpayers, and have sought their remedy by injunction. There was a decree in their favor, holding the organization of the defendant school district to be illegal and void. The defendants have appealed.—*Reversed.*

*Ring & Hann* and *Treichler & Treichler*, for appellants.

*F. L. Anderson,* for appellees.

LADD, J.—The defendant Consolidated Independent School District of Troy Mills was organized, if at all, under the provisions of Section 2794-a, Code Supplement, 1913. The other defendants in the case are the acting directors who were elected as such following the alleged organization. The defendants question the right of the plaintiffs to challenge by an injunction suit the legality of the defendants' existence as a corporation, and urge that *quo warranto* is the only remedy available for that purpose.

1. QUO WARRAN-
TO: nature
and grounds:
illegality in
corporate or-
ganization:
schools and
school dis-
tricts.

That *quo warranto* is an appropriate remedy appears from Chapter 9 of Title XXI of the Code. A complete and adequate remedy at law is there provided for testing the validity of corporate organizations, and this remedy is quite generally held to be exclusive. It was applied in *State v. Independent School Dist.*, 29 Iowa 264. In *Cochran v. McCleary*, 22 Iowa 75, the right of a mayor to preside at meetings of a city council in cities of the second class was involved. The court held such right to preside, a franchise, and that the right to exercise the same might not be tested in equity; that the exclusive remedy was that of *quo warranto,* saying:

"In England and in the different states in this country, the law, solicitous to furnish a remedy for every invasion of legal right, has provided that of *quo warranto,* or an information in the nature of a *quo warranto,* to determine the title of an officer to his office and to determine the right of any person or corporation to exercise a public franchise."

In *State v. Alexander,* 129 Iowa 538, *quo warranto* was held to be the proper remedy to test the validity of the organization of an independent school district, and it was intimated that certiorari proceedings were inappropriate,

inasmuch as complaint was not of the exercise of any judicial function.

2. QUO WARRAN-
TO: proceedings, etc.:
parties:
pleading.

In *State v. Independent School Dist.,* 44 Iowa 227, the action was against the district, and, though recognizing the remedy by *quo warranto* as appropriate, the court held that the action must be brought against the persons acting as a corporation alleged not to exist, saying that to sue it would admit that it had been organized. This conclusion is based on the language of Paragraph 3 of Section 4313 of the Code, providing that a civil action by ordinary proceedings may be brought in the name of the state "against any person acting as a corporation within the state without being authorized by law."

Though this would seem the better practice, in several states the so-called corporation is held to be a necessary party. See *State v. Tracy,* (Minn.) 51 N. W. 613, and cases cited. Contra, *State v. Uridil,* (Neb.) 55 N. W. 1072. Whether making the so-called corporation a defendant would amount to an admission of its corporate existence depends upon the allegations of the petition; for the mere inclusion of a name as a defendant could not operate as an admission against an express averment in that pleading to the contrary.

In *State v. Gaston,* 79 Iowa 457, an action in *quo warranto* was held to be at law, and not triable *de novo.* In *Wallace v. Independent School Dist.,* 150 Iowa 711, as in several other cases, the suit was in equity, but the propriety of the procedure was not questioned. Here the right to challenge the organization of a corporation otherwise than by information in the nature of *quo warranto* was raised in the trial court and is pressed here. In no case since *Cochran v. McCleary,* supra, declaring this remedy exclusive, has that decision been questioned, nor has other remedy, when challenged, been held to be available.

The cases in equity in which the issue was determined are recent, relating to the organization of consolidated school districts, and furnish no sufficient foundation for the assertion that the bench and bar of this state have acquiesced in repudiating the statutes prescribing the procedure for testing the legality of corporate organizations, or ignored the universal holding that such procedure is exclusive. Acquiescence in the few equity cases in which the issue was decided finds explanation in the fact that dismissal because of error in procedure in such a case is in the nature of an abatement, and furnishes no obstacle to the institution of another action, and counsel with a good defense, as was found to exist in these cases, might well prefer to carry them to conclusions, rather than insist on dismissal and thereby merely delay the final determination of the issues raised. It should be added that acquiescence as a reason for holding that corporate existence may be tested in equity is not suggested by counsel nor in the record before us. Such suggestion originated with our disagreeing brothers, and, without challenging their veracity, we are constrained to doubt the correctness of their deductions from the facts, and to intimate that vivid imaginations have been active in assuming a condition not known to exist. Even were conditions as imagined, little inconvenience would be experienced in returning to a rational and statutory method of testing the validity of corporate organizations; for the dismissal of suits pending, if any there are, owing to error in selecting the wrong procedure, might delay but would not prevent resort to the procedure prescribed by statute.

Concession that this court may be held to have acquiesced in anything not presented to it for decision is not to be inferred from anything said. It is quite enough to say that we are quite unaware of acquiescence of bench or bar in the repudiation of the remedy through *quo warranto* proceedings, recognized by all courts, as well as text books,

as exclusive in cases like this.   In no case other than *School Dist. Township of Franklin v. Wiggins,* 122 Iowa 602, is an intimation to be found that corporate existence may be tested otherwise than by *quo warranto* proceedings, as exacted in *Cochran v. McCleary,* supra.   Nor is it clear from the record in that case that the writer of the opinion intended to hold more than that a suit in equity might be maintained even though it were necessary, as a circumstance or incident in the case, that the incorporation be shown to be merely colorable, and effected secretly and fraudulently, with the wrongful purpose of attaining results not authorized by law.   In such a case, the alleged organization would be but a circumstance or incident in carrying out the unlawful designs of the perpetrators of the fraud, and undoubtedly might be the subject of investigation as an emergent issue, at the instance of a private litigant.   Though some of the language of the opinion is broader, the allegations of the petition are in harmony with this interpretation.   This view is confirmed by a later opinion of this court, filed upon a third appeal (142 Iowa 377), where it appears that final decree was entered against defendants as directors of this independent school district, assailed on the emergent issues with reference to an accounting.

A school district is, under our statutes, a public corporation, and as all parties, in undertaking to organize the district in controversy and in selecting officers thereof, acted in good faith, the Consolidated Independent District of Troy Mills is a *de facto* corporation.   To constitute a corporation *de facto,* three things are necessary: (1) Some law under which a corporation with powers assumed may lawfully have been created; (2) a colorable and bona fide attempt to perfect an organization under such a law; and (3) user of the rights claimed to have been conferred by the law,—that is, of the corporate franchise.   *Tulare Irrigation*

*Dist. v. Shepard*, 185 U. S. 1 (46 L. Ed. 773).; *Pierce v. Inhabitants of Town of Lutesville*, 25 Mo. App. 317; *Evens v. Anderson*, (Minn.) 155 N. W. 1040.

Whether this district has the qualities of a corporation *de jure* is the sole issue in this case, and this can be raised by the state only. This is sometimes put on the ground that "corporate franchises are grants of sovereignty only, and if the state acquiesces in their usurpation, individuals will not be heard to complain " (*Miller v. Perris Irrigation Dist.*, 85 Fed. 693 [C. C.]), but oftener upon considerations of public policy, such as the importance of stability and certainty in such matters, and the consequences likely to, or which might, follow if the existence of a municipal corporation should be called in question and perhaps denied in actions between the corporation and private parties. See *State v. Honerud*, 66 Minn. 32 (68 N. W. 323).

In *Brennan v. City of Weatherford*, 53 Tex. 330, 336, the court remarked that:

"The creation of a corporate franchise is an attribute of sovereignty to be exercised solely by the supreme power of the state. Such franchise being amenable only to the power of its creation, it follows that this power alone can question the legality of its existence, by such proceedings as in its wisdom it may adopt."

To permit the existence of public corporations to depend on private litigation would be inimical to the welfare of the community. Experience has demonstrated that irregularities of more or less importance are to be found in the organization of nearly every incorporated body. Technical accuracy is not to be expected. The legal existence of a public corporation cannot be questioned without causing disturbance, more or less serious, and if the regularity of its organization can be kept open to inquiry indefinitely, no one can ever be sure that any of the taxes levied to meet its expenses, or the contracts necessarily entered into by it,

would be valid and enforceable.   The transaction of public business might be blocked by private litigation commenced at the will or whim of any citizen.   Where there has been an honest effort to comply with the law in the organization of a corporation, as a school district, and the officers selected proceed to execute the powers thereof, every presumption should be and is in favor of the regularity of such organization, and it is to be regarded as valid save when assailed by the state on information in the nature of *quo warranto*.

The convenience and security of vicinage ought not to be left exposed to disturbance by anyone who chooses to begin a law suit.   To watch over and prevent the development of political growths which are likely to be prejudicial to the public interests is peculiarly the province and duty of the state, and in the procedure for testing the legality of corporations, the lawmakers have provided adequate protection of private interests, and at the same time guarded against the confusion which would be likely were others than the state permitted to raise such an issue.   Section 4315 of the Code authorizes the county attorney to institute suit in the name of the state, and requires him so to do if so directed by the governor, general assembly or a court of record; and Code Section 4316 provides that if, on demand, the county attorney neglects or refuses to commence suit, "any citizen   *   *   *   having an interest in the question may apply to the court in which the action is to be commenced, or to the judge thereof, for leave to do so, and, upon obtaining such leave, may bring and prosecute the action to final judgment."   This affords ample protection for all private interest, for it must be assumed that the court or judge having jurisdiction will safeguard all private interests in ruling on applications of the character mentioned.   This obviates most that was said in *School District Twp. of Franklin v. Wiggins*, supra, when applied to

a case not involving incidentally the perpetration of a fraud and praying for an accounting as the remedy, and, as said, obviates all objection to the exclusive remedy of *quo warranto* proceedings. But for this statute, it would be doubtful whether such an action might be prosecuted by other than the attorney general in the name of the state. See *State v. Olson,* (Minn.) 21 L. R. A. (N. S.) 685, and note. The decisions are uniform in holding that, in the matter of testing the legality of the organization or the existence of a public corporation, remedy by information in the nature of *quo warranto* is exclusive. The rule is accurately stated in 1 Abbott on Municipal Corporations, Section 32:

"The proposition may present itself, In what manner, by whom, and at what time can the question of legal right be raised? The rule of law invariably is that the state alone can question the right of the public corporation to exist and perform its duties and exercise its rights, and then in a proceeding brought for that purpose. And also that the question of legal corporate existence cannot be raised in a case or proceeding as collateral to the main issue, or through collateral attack."

See, also, 1 McQuillin on Municipal Corporations, Sections 158, 159 and note.

In *School Dist. No. 21 v. Board of County Commissioners,* 15 Wyo. 73 (11 Am. & Eng. Ann. Cas. 1058), the suit was by the board of county commissioners to enjoin the county treasurer from paying to the school district certain taxes theretofore levied, on the ground that the district had not been legally organized. It was allowed to defend, and it demurred to the petition, and the court held that the question could only be raised in *quo warranto* proceedings. In *Burnham v. Rogers,* 167 Mo. 17 (66 S. W. 970), the court, in reaching the same conclusion, said:

"Their right to exist and act as such corporations can-

not be impeached collaterally in the manner attempted in this petition. Confusion amounting to chaos would result if the life of every municipal or other public corporation in the state could be assailed in this manner."

The Supreme Court of Michigan, speaking through Cooley, J., in *Stuart v. School Dist. No. 1,* 30 Mich. 69, in declaring *quo warranto* the exclusive remedy, stated that:

"If every municipality must be subject to be called into court at any time to defend its original organization and its franchises at the will of any dissatisfied citizen who may feel disposed to question them, and be subjected to dissolution, perhaps, or to be crippled in authority and powers if defects appear, however complete and formal may have been the recognition of its rights and privileges, on the part alike of the state and of its citizens, it may very justly be said that few of our municipalities can be entirely certain of the ground they stand upon, and that any single person, however honestly inclined, if disposed to be litigious or over-technical and precise, may have it in his power in many cases to cause infinite trouble, embarrassment and mischief."

And in *Clement v. Everest,* 29 Mich. 19, 23:

"In such matters as concern the public, and do not interfere with private property or liberty, such action as creates municipal bodies and gives them corporate existence cannot be questioned without creating serious disturbance. If the regularity of their organization can be kept open to question indefinitely, no one could ever be sure that any of the taxes or other matters concerning his town were valid, and the whole public business might be blocked by litigation. There are some matters affecting private rights which are scrutinized strictly, because no one can be deprived of private rights without conformity to law. Where one man's property is taken for public purposes without his consent, the taking must be justified by regular action. But

where the organization of a local corporation, as a town or district, is left to the will of any particular body of electors or officers, and they proceed to execute their powers and complete the organization, their executed will ought to stand, if there has been a substantial compliance with the policy of the law giving them jurisdiction. Every presumption is to be made in favor of the regularity of such action, and where there is a valid law, and an organization under it which proceeds from the lawful agencies, it should be regarded as entitled to legal standing, unless measures are speedily taken to assail such action by some competent authority. * * * The same rule which recognizes the rights of officers *de facto* recognizes corporations *de facto,* and this is necessary for public and private security."

On the same question, the court in *Trumbo v. People,* 75 Ill. 561, an action to recover the tax levied on school lands belonging to plaintiff, observed that:

"Notwithstanding the school district was thus illegally formed in violation of this statutory condition, a majority of the court are of the opinion that, in this collateral proceeding, the legality of the formation of the district cannot be inquired into, but that it must be taken as having been rightfully formed; and that the only mode in which the illegality can be inquired into and taken advantage of is by information in the nature of a *quo warranto.*"

*Evens v. Anderson,* (Minn.) 155 N. W. 1040, is directly in point. The suit was in equity, to enjoin defendants therein, as officers of a so-called consolidated school district, from transacting any business as such, for that it had not been organized as provided by law, and the question raised was whether the individual plaintiff in such a case may draw in question the capacity of the district to act as a corporation. In answering in the negative, the court, speaking through Hallam, J., said:

"The rule is fixed by unanimity of authority that, where

a municipal body has assumed, under color of authority, to exercise the power of a public corporation of a kind recognized by the organic law, the validity of its organization can be challenged only by the state, and neither the corporation nor any private party can, in private litigation, question the legality of its existence. *   *   * It is claimed that this is a direct, as distinguished from a collateral, attack. We shall not spend time in discussion of that question, for we conceive that it is not important. In some decisions, we find the language that the existence of a public corporation cannot be drawn into question in a collateral action between private parties. We think the rule equally well settled and sound that private citizens cannot raise such question by any form of direct attack. *Quo warranto* is the proper and, in the absence of statute, the exclusive proceeding to determine the question of the legal existence or validity of the organization of a public corporation.   *   *   * The essential point is that the right to draw in question the legality of an existent body of the character mentioned is the prerogative of the state, and not of private litigants. A private citizen having no interest distinct from that of the public may not invoke the writ of *quo warranto* to test the organization of a public corporation. It may be invoked only by the attorney general of the state. The reason is not a technical one. It is an application of the principle that public rights are to be vindicated by public authority. *State ex rel. v. McDonald,* 101 Minn. 349 (112 N. W. 278) ; *State ex rel. v. Olson,* 107 Minn. 136 (119 N. W. 799, 21 L. R. A. [N. S.] 685). The private litigant should not be permitted to reach the same result by a change of form of action."

The decisions holding that the legality of the organization of a municipal corporation cannot be tested save on suit in the name of the state, on information in the nature

of *quo warranto,* and that the validity of such corporation may not be questioned collaterally, are too numerous for citation; but see, in addition to those cited, *People v. Pederson,* 220 Ill. 554 (77 N. E. 251), *State v. Several Parcels of Land,* (Neb.) 113 N. W. 810, *City of Topeka v. Dwyer,* 70 Kans. 244 (3 Am. & Eng. Ann. Cas. 239 and note).

3. INJUNCTION: nature and grounds: illegality of corporate organization.

We are of opinion that plaintiff chose the wrong remedy, and that this error may not be obviated by a transfer to the law side of the calendar, as this could not substitute the state as the party instituting the proceeding. The petition should have been dismissed. —*Reversed.*

GAYNOR, C. J., WEAVER, PRESTON and STEVENS, JJ., concur.

EVANS, J., dissenting.—I raise no question as to the probable correctness of the majority opinion as an original proposition. My objection to it is that it ignores the fact that for many years the injunctive remedy has, by common acquiescence of bar and bench, been prayed and granted in this class of cases. Numerous cases of this character appear in our Reports which have been tried and decided on the merits in injunction proceedings. It is true that, in such cases, the propriety of the procedure was not challenged by counsel; and I freely concede that it is ordinarily no part of our duty, as between the litigants in a case, to raise a question which they have chosen to ignore. But these decisions have all been promulgated as law, and each of them has, to some extent at least, become a precedent. Granting that, ordinarily, they become precedents only for what they actually decide, the fact remains that the practice referred to has become so general as fairly to amount to precedent. Indeed, it is a fair contention, even though a debatable one, that, in the *Wiggins case,* 122 Iowa 602,

we gave our affirmative approval to the remedy by injunction.

We may fairly presume that many cases have been begun and are pending in this form, through the reliance of counsel upon the practice thus impliedly approved. The effect of our present holding will be disastrous to such pending cases; and the fatal blow will be as stealthy as that of a modern submarine.

The remedy by injunction is flexible and practical, and is not easily subject to abuse. The practical result will be the same by either remedy.

I feel sure that the majority holding will inflict a general surprise upon the bar and upon the trial courts of the state. If this be correct, the holding carries something of an adverse presumption against itself. If it be deemed desirable to terminate the long-time practice above referred to, it were clearly better that it be done by legislation, which would operate prospectively only; whereas a change by judicial decision is necessarily retroactive.

SALINGER, J., concurs in this dissent.